No. 3:14-CV-00493

DOC NO
REC'D/FILED

2014 SEP -8 AM 10: 36

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE SEVENTH CIRCUIT

---

Dallas Buyers Club, LLC,

> Plaintiff,

> v.

Does 1-25,

> Defendants.

---

## MOTION TO DISMISS AND/OR SEVER COMPLAINT AND QUASH THIRD-PARTY SUBPOENA

---

One of the John Does in this case respectfully moves the Court for dismissal or severance of this case, in the above captioned matter, and moves the Court to quash the subpoena served on third-party Charter Communications, Inc. (hereinafter referred to as "ISP"), seeking information about John Does.

This motion is based on four arguments:

(1) Improper joinder

(2) The person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered

*1*

(3) Even the Media Access Control (MAC) address will often indicate on the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time

(4) The inability to identify who actually accessed the internet through given IP and MAC addresses introduces an unacceptable degree of uncertainty with regard to the identification of factual wrongdoers.

## INTRODUCTION

The plaintiff brings this action under the Copyright Act against twenty five anonymous defendants identified only by their internet protocol ("IP") addresses. The plaintiff alleges that each defendant infringed on its copyright in the work at issue by sharing it on the Bit Torrent internet peer-to-peer file sharing protocol. To determine the true identity of each defendant from the subscriber information for each IP address, the plaintiff seeks, pursuant to Fed. R. Civ. P. 45, to issue subpoenas to the internet service provider (ISP) to which each defendant subscribes. The subpoenas will demand the "true name, address, telephone number, e-mail address, and MAC [(Media Access Control)] address of each Doe Defendant that Plaintiff has identified to date. The plaintiff states it intends to use the identity information obtained from the ISPs only to prosecute the claims in this action. Without obtaining the information as to each Doe's identity, the plaintiff cannot serve each defendant and allow his action to proceed.

To minimize court costs while suing or threatening to sue as many individuals as possible, the plaintiff's counsel, Keith Vogt, is using improper joinders as have been typical in suits alleging copyright infringement through Bit Torrent. Information retrieved from RFC Express Lawsuit Search

(http://www.rfcexpress.com/index.asp) indicates that Mr. Vogt, for the month of July 2014 alone, submitted at least 32 filings on behalf of the Plaintiff in Washington, Colorado, Illinois, Hawaii, Indiana, Michigan and Wisconsin.   These 32 filings attempt to join over 620 individuals, in manners similar to those at issue here.  In fact, a query for June and the months and years before reveals similar results on behalf of the same Plaintiff here and various other plaintiffs, revealing a scheme to wholesale the legal processes of thousands of individuals.  On July 8 2014, this Court was burdened by two of these cases attempting to ensnare 45 individuals into the plaintiff counsel's indiscriminate practices.

The complaint should be dismissed as to John Doe, or in the alternative, the complaint should be severed, and the third-party subpoena to ISP should be quashed.

## ARGUMENT

**I.    The complaint should be dismissed because it is impossible to establish that the defendants are the actual individuals using a device connected to the internet at any given time.**

This complaint should be dismissed because the plaintiff cannot establish that the defendants, who are individuals to whom the implicated IP addresses are registered, are the individuals that allegedly violated the copyright act.   There are many circumstances in which the person to whom an IP address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration (Case 2: 12-cv-02084-MMB Document 9). A copy of this Declaration is attached (Exhibit B).

The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address and the implications of this have been recognized previously by the courts. Ad the Eastern District of New York stated, "it is no more likely that the subscriber to an IP address carried out a particular computer function ... than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).

## A.     Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.

The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This is discussed in more detail in the Declaration referenced in (2) above.

- 4 -

This has explicitly been recognized in *In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). The Court noted:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:
>
>> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software.

*Id.* (quoting *U.S. v. Latham,* 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007).

**B.      The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers.**

If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as

an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions. The Honorable Harold A. Baker noted when commenting *on VPR International v. DOES 1- 1017* (2:11-cv-02068-HAB -DGB # 15), that:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect." Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and in-tent" of class actions. Order, die 9. [p.3]

Magistrate Judge Harold R. Loyd writing in regard to *Hard Drive Productions v. Does 1-90*, C/l-03825 HRL stated:

> Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact Bit Torrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint 29. But, plaintiff's counsel admitted at the hearing that plaintiff could not truthfully allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from one another. [p.l0], emphasis added]

In Eastern District of New York Case *In re BitTorrent Adult Film Copyright Infringement Cases*, which addressed three cases (*Malibu Media, LLC v. John Does*

*1-26*, CV 12-1147 (L)) (GRB). M*alibu Media, LLC v. John Does 1-11*, C'V 12-1150 (LOW) (GRB), and *Patrick Collins, Inc. v. John Does 1-9*, CV 12-1154 (ADS) (GRB)) U.S. Magistrate Judge, the Honorable Gary Brown noted that:

> These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *See, e.g., Malibu 26*, Compl. At 9 or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts.

Judge Brown also observed that another judge had previously noted:

> The ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes. By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 81]

Finally, also writing in case 11-cv-03995, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

> Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

## II.   The Defendants Should Be Severed Because They have Been Improper Joined.

The plaintiffs' joinder of 25 defendants in this single action is improper and runs

the tremendous risk of creating unfairness and denying individual justice to those

sued. This complaint should be dismissed or, at a minimum, the defendants should

be severe.

Mass joinder of individuals has been disapproved by federal courts in similar cases

in this circuit. In a Bit Torrent case nearly identical to this one, *CP Productions, Inc.*

*v. Does 1-300*, the court noted before dismissal:

> If the 300 unnamed defendants have in fact infringed any copyrights
> (something that this court will assume to be the case, given the Complaint's
> allegations that so state), each of those infringements was separate and apart
> from the others. No predicate has been shown for thus combining 300 separate
> actions on the cheap - if CP had sued the 300 claimed infringers separately for
> their discrete infringements, the filing fees alone would have aggregated
> $105,000 rather than $350.

*CP Productions, Inc. v. Does 1-300*, 2011 WL 737761 (N.D. Ill. February 24, 2011)

(denying a motion for reconsideration on the decision to dismiss the complaint).

Commenting on the same case, Judge Milton Shadur wrote:

> This Court has received still another motion by a "Doe" defendant to quash a
> subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP")
> against no fewer than 300 unidentified "Doe" defendants - this one seeking the
> nullification of a February 11, 2011 subpoena issued to Comcast
> Communications, LLC. This Court's February 24, 2011 memorandum opinion
> and order has already sounded the death knell for this action, which has
> abused the litigation system in more than one way. But because the aggrieved
> Doe defendants continue to come out of the woodwork with motions to quash,
> indicating an unawareness of this Court's dismissal of this action, 1 CP's
> counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel
> will be expected to discuss what steps should be taken to apprise all of the
> targeted "Doe" defendants that they will not be subject to any further trouble
> or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

*See CP Productions, Inc. v. Does 1-300*, 2011 WL 737761 (N.D. Ill. February 24, 2011).

In the same vein, the Southern District of New York dismissed all but one of the

defendants (John Doe #1) in *Digital Sins, Inc. vs. John Does 1-245*, 2012 WL 1744838

- 8 -

(May 15, 2012), writing that, "They are dismissed because the plaintiff has not paid

the filing fee that is statutorily required to bring these 244 separate lawsuits." In

that case the under payment exceeded $85,000.00.

The Eastern District of Pennsylvania has also determined that these types of

complaints are inappropriate:

> Comcast subscriber John Doe could be an innocent parent whose
> internet access was abused by her minor child, while John Doe 2 might share
> a computer with a roommate who infringed Plaintiffs' work. John Doe 3
> through 203 could be thieves (pirates), just as Plaintiffs believe, inexcusably
> pilfering Plaintiffs property and depriving them, and their artists of the
> royalties they are rightly owed ... Wholesale litigation of these claims is
> inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (E.D.Pa. Apr.2, 2004) (severing

lawsuit involving 203 defendants).

A number of courts in Bit Torrent cases have recognized the effect of joinder on

the court as well as on the John Doe defendants:

Under Fed. R. Civ. P. 20.

> Persons ... may be joined in one action as defendants if: (A) any right to relief
> is asserted against them jointly, severally, or in the alternative with respect to
> or rising out of the same transaction, occurrence, or series of transactions or
> occurrences; and (B) any question of law or fact common to all defendants will
> arise in the action.

> Fed. R. Civ. P. 20(a)(2). "The court may issue orders-including an order for
> separate trials-to protect a party against embarrassment, delay, expense, or
> other prejudice ... . " Fed. R. Civ. P. 20(b). Finally, the court may add or drop a
> party "on just terms" or sever any claim against a party without a motion by a
> party. Fed. R. Civ. P. 21.

Joinder based on separate but similar behavior by individuals allegedly using

the Internet to commit copyright infringement has been rejected by courts across the

country. In *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992 (E.D.N.C. Feb.27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "Merely committing the same type of violation in the same way does not link defendants together for purpose of joinder". *LaFoce Records*, 2008 WL 544992, at *2.

In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP-2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court sua sponte severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. *See also Interscope Records v. Does 1-25*, No.6:04-cv-197-0RL-22DAB, 2004 U.s. Dist. LEXIS 27782 (M.D.Fla. Apr. 1, 2004) (magistrate recommended sua sponte severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (E.D.Pa.Apr. 2, 2004) (severing lawsuit involving 203 defendants); *In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et 01. v. Does 1-41* (No.A-04-CA-550 LY), Atlantic Recording Corporation, et 01. v. Does 1-151 (No.A-04-CA-636 55), Elektra Entertainment Group, Inc.et 01. v. Does 1-11 (No.A-04-CA-703-LY); and UMG Recordings, Inc., et 01. v. Does 1-51 (No. A-04-CA-704-LY) (W.S.Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but the first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized

music file-sharing); Order Granting in Part and Denying in Part Plaintiff's Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, Twentieth Century Fox Film Corp,. et 01., v. Does 1-12, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe Defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

The plaintiff may argue that, unlike the other cases, its allegations here are based upon use of the internet to infringe on a single work (Initial Seeder). While that accurately describes the facts alleged in the case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for the joinder. *See BMG Music v. Does 1-203*, 2004 WL 953888, at *1.

Nor does the analysis change because Bit Torrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., Deluge, Transmission, Vuze, and LimeWire) have incorporated multisource/swarming downloads since 2002.

It is impermissible to join many anonymous defendants alleged to have participated in a single downloading "swarm" in the same lawsuit. In order for joinder to be proper, the plaintiff must establish that the defendants accessed the

"swarm" contemporaneously. *Compare, Reynolds,* 2013 U.S. Dist. LEXIS 31228, at *26–36 (Kendall, J.) (collecting cases and finding joinder improper because plaintiff did not allege that anonymous defendants accessed the swarm at the same time), and *Malibu Media, LLC v. John Does 1–21,* No. 12 C 9656, 2013 LEXIS 79433, at *13–19 (N.D. Ill. June 6, 2013) (Reinhard, J.) (same).

The plaintiff claims all of the defendants are properly joined because they illegally downloaded/shared the film "Dallas Buyers Club" via Bit Torrent. The plaintiff incorrectly states the infringement was accomplished by defendants "acting in concert with each other". Exhibit B shows the timeframe of the activity but not which IP addresses acted in concert. The nature of Bit Torrent does not support the plaintiff's claim that all John Doe IP addresses acted together as a "swarm".

The nature of Bit Torrent is that the work in question is first made available to other Bit Torrent users by a small number, usually one IP address. As other Bit Torrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the swarm shrinks, and eventually disappears. IP addresses commonly join and leave various Bit Torrent swarms at all times during the life of the torrent.

Discussions of the technical details of Bit Torrent protocols aside, the individual defendants still have no knowledge of each other, nor do they control how the protocol works, and the plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated

- 12 -

defendants in one lawsuit may make litigation less expensive for the plaintiff by enabling it to avoid the separate filing fees required for the individual cases and by enabling its counsel to avoid travel/and or other expenses, but that does not mean these well-established joinder principles need not follow here.

The defendants should be severed because they were impermissibly joined.

## CONCLUSION

For the reasons stated above, Defendant John Doe respectfully requests that the Court dismiss the case, or, in the alternative, sever the defendants and quash the subpoena to Charter Communications.

Dated this 5th day of September, 2014.

Respectfully submitted,

s/John Doe
John Doe
johndoe1-25@hushmail.com
*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on 09/05/2014, I served a copy of the foregoing document, via US Mail, to:

      Keith A.Vogt/Takiguchi & Vogt
      1415 W 22nd Street, Tower Floor
      Oak Brook, IL-60523


Dated: 09/05/2013                            Respectfully submitted,

                                            s/John Doe
                                            John Doe
                                            johndoe1-25@hushmail.com
                                            *Pro Se*